Filed 9/10/15  P. v. Prasad CA2/3

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DHARMENDRA PRASAD,<br><br>    Defendant and Appellant. | B254606<br><br>(Los Angeles County<br>Super. Ct. No. NA097073) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James B. Pierce, Judge.  Affirmed.

Carey D. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Prasad asserts a number of claimed errors in his criminal trial and sentencing. Appellant claims that he did not knowingly and intelligently waive his right to counsel. He asserts a violation of the confrontation clause and an abuse of discretion because the trial judge limited his cross-examination regarding Wal-Mart's procedures and policies for detaining shoplifters. The appellant objects that the trial judge was not fair and impartial. And, he objects to an impermissible dual use of his prior convictions. We find these arguments to be without merit. Accordingly, the judgment of conviction is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant entered a Wal-Mart store. As observed both by store security and video cameras located throughout the store, appellant took a Gateway computer box and placed it in his cart. He removed the anti-theft "spider wrap" from the computer box. Appellant then went to the appliance section and pulled a boxed George Foreman grill off the shelf. Appellant took the grill out of the Foreman box and put it on a lower shelf. Appellant then removed the computer tower from the Gateway box and put it into the empty Foreman grill box. He abandoned the computer box, went around the store a few more times, and then checked out. At the checkout, appellant paid for a Foreman grill and a few other items and left the store.

Appellant was stopped by Wal-Mart security and the grill box was taken back inside the store. When that box was opened, it contained a Gateway computer tower. When questioned by the police, appellant admitted that he had gone to Wal-Mart to purchase a computer but, when he didn't have enough money to purchase the one he wanted, he decided to steal it.

In an amended information, appellant was charged with petty theft with a prior theft-related conviction and a prior strike conviction. Penal Code section 666,

subdivision (b).[1] It was further alleged that defendant had suffered prior convictions for grand theft, vehicle theft and criminal threats. The information also alleged the criminal threats conviction as a strike and a one year prison prior.

Appellant was arraigned and pled not guilty. Appellant requested that he be allowed to represent himself. Even though there was no room in the county jail's pro per module, petitioner expressed a desire to represent himself. At his preliminary hearing, petitioner reiterated that he wanted to represent himself. He was told that he might not be placed into the pro per module and stated that he understood that limitation and still wanted to be his own attorney.

At his arraignment in Superior Court, appellant initialed and signed an Advisement and Waiver of Right to Counsel (*Faretta* waiver). On that form, he stated that he had attended the Fiji Institute of Technology and had taken classes in paralegal services. Also, on that form, appellant was advised of the many dangers and disadvantages of self-representation. He acknowledged each of these by initialing a box. He was advised that the court recommended that he not act as his own attorney and that he accept a court-appointed attorney. The trial judge reiterated that recommendation and admonished appellant to reconsider his decision. Appellant certified that he was freely and voluntarily giving up his right to counsel.

On the first day of trial, the trial court ensured that appellant still wished to represent himself and required appellant to complete a second *Faretta* waiver form. As part of that form, appellant represented that he was a college graduate. The same dangers of self-representation were identified and appellant acknowledged each of them by placing his initials next to them. At the conclusion of that form, appellant certified that he was -- once again -- freely and voluntarily giving up his right to counsel. This was not the first time appellant had represented himself. He had been his own attorney in a criminal proceeding in Riverside County. Before appellant completed the *Faretta*

---

[1] All further statutory references are to the Penal Code unless stated otherwise indicated.

waiver form, the court instructed appellant to read the form carefully before completing it and cautioned appellant against the dangers and consequences of self-representation.

Although appellant represented himself, he did so vigorously. He prepared and submitted a number of motions and made several requests of the court. Appellant filed a demurrer and a motion to strike his prior conviction. He requested an investigator and that request was granted. Appellant filed a motion to set aside the information, a plea of acquittal, a motion to suppress evidence, a motion to dismiss the action, a discovery motion and an untimely peremptory challenge. Before trial, appellant submitted proposed jury instructions.

Trial was by jury. The jury found appellant guilty as charged and found the prior theft offense, the strike offense and the prison prior to be true. The court imposed a sentence of seven years in state prison -- the high term of three years on the section 666, subdivision (b), doubled due to the strike, plus one year for the prison prior. The court based its selection of high term on appellant's long criminal history and his overall inability to conform his conduct to the law.

## DISCUSSION

Appellant asserts different arguments in support of his appeal. We find those contentions without merit.

1.    *Appellant Knowingly and Intelligently Waived His Right to Counsel*

Appellant asserts that his waiver of counsel was not knowing and intelligent.

On appeal, we "independently examine the entire record to determine whether the defendant knowingly and intelligently waived the right to counsel." (*People v. Burgener* (2009) 46 Cal.4th 231, 241.) In this inquiry, appellant bears the burden of demonstrating that he did not knowingly waive his right to counsel. (*People v. Weber* (2003) 217 Cal.App.4th 1041, 1058-1059.)

Appellant fails to meet his burden in this case. Appellant was repeatedly advised -- in writing and orally -- of the problems and dangers of self-representation. He was warned, in fact, that his pro per status did not guarantee that he would be housed in the

4

pro per module, thus limiting further his access to legal materials. He completed fully two *Faretta* waiver forms, in which he was advised of the limitations and dangers of self-representation and acknowledged them. In the face of these warnings and acknowledgments, it cannot be said that he did not understand the disadvantages of his decision. (See *People v. Weber, supra,* 217 Cal.App.4th at pp. 1058-1059 (If the warnings communicate powerfully to the defendant the disadvantages of proceeding pro se, that is all *Faretta* requires).)

Appellant's full and complete understanding of the limitations and dangers of self-representation is evinced by the sophistication of his pre-trial and trial practice. He submitted statutory and constitutional challenges to the prosecution, a discovery motion, an untimely peremptory challenge against the trial judge and proposed jury instructions. Appellant cannot meet his burden of demonstrating that he did not understand his right to counsel and knowingly waive that right.

    2.    *The Trial Court Did Not Err In Limiting Appellant's Cross-Examination*

Appellant asserts that the trial court violated the Confrontation Clause and abused its discretion by limiting the cross-examination of Peter Mankarious, the Wal-Mart loss prevention employee who witnessed him swapping out of the computer tower and who detained him outside the store. We disagree.

    a.    *The Trial Court's Limitation on Appellant's Cross-Examination Did Not Violate the Confrontation Clause*

The rules of evidence ordinarily do not infringe on a defendant's right to present a defense. In certain limited settings, however, a court's limitation on evidence may rise to a constitutional violation. For example, a constitutional violation may occur where a defendant can show that he was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680; *People v. Frye* (1998) 18 Cal.4th 894, 946, disapproved on another point by *People v. Doolin* (2009) 45 Cal.4th 390, 421 fn. 22.)

5

In this case, appellant does not establish that the court's limitation on the scope of his cross-examination of Mankarious violated the Confrontation Clause. In fact, appellant was given substantial leeway in cross-examining Mankarious on the issue of bias and credibility. Appellant asked a number of questions to establish Mankarious' bias and lack of candor. Appellant confronted Mankarious with surveillance video that disputed the security guard's claim that appellant had balled up his fist when accosted outside of the store. Appellant also showed that same tape to refute Mankarious' testimony that appellant had pushed his shopping cart into him. Appellant established that Mankarious pinned him against the wall outside of the store, even though appellant had not presented a threat. Appellant got Mankarious to admit that the surveillance video failed to capture appellant pulling a Foreman grill box off the shelf and failed to capture the switching of the grill for the computer tower. These facts arguably support a reasonable inference that Mankarious was fabricating the events at issue. Appellant also asked questions that explored Mankarious' bias when he inquired whether he'd been profiled by the loss prevention officer. Appellant asked why Mankarious was originally suspicious of him and, when Mankarious said it was because appellant was "carrying a bag," he inquired as to how many Wal-Mart customers enter the store carrying a bag.

In this case, the trial court permitted appellant to cross-examine Mankarious on a number of different challenges to his credibility and provided appellant latitude to explore whether the witness was biased. Given this record, it cannot be said that appellant was denied an adequate opportunity for cross-examination. (Cf. *Delaware v. Van Arsdall, supra,* 475 U.S. at pp. 678-679 (trial court barred testimony on agreement between informant and the state).)

b.    *The Trial Court's Limitation on Appellant's Cross-examination Was Not an Abuse of Discretion*

The trial court has broad discretion to determine the relevance of evidence and we will not disturb the court's exercise of that discretion unless it acted in an arbitrary, capricious or patently absurd manner. (*People v. Jones* (2013) 57 Cal.4th 899, 947.)

6

In this case, it was neither arbitrary nor capricious for the court to limit appellant's inquiry on the issue of whether the force used to detain him was consistent with Wal-Mart's loss prevention policies and procedures. Appellant had already established that Mankarious' decision to pin him against the wall was arguably excessive given the absence of any videotape evidence that appellant had balled his fist or hit Mankarious with a shopping cart. Whether the security guard's response comported with Wal-Mart policy was cumulative on the issue of bias. The limited probative value of whether Mankarious was within Wal-Mart's guidelines on detaining shoplifters was substantially outweighed by the possibility that such an inquiry would have confused the issues and resulted in the undue consumption of time. Accordingly, the court properly exercised its discretion to exclude it.

3.	*Appellant's Due Process Was Not Deprived Due to Judicial Misconduct*

Appellant asserts that he was denied due process because the trial judge in his case was not fair and impartial. Specifically, appellant complains that the trial judge disparaged him in front of the jury and allied himself with the prosecution when he disallowed appellant's questions about Wal-Mart's loss prevention procedures. Appellant asserts, "[I]nterrupting appellant was argumentative and improper and undermined his credibility."

Appellant has forfeited his claim of judicial misconduct by failing to assert a timely objection at trial. As a general rule, a claim of judicial misconduct is not preserved for appellate review if no objections were made on those grounds at trial. (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237; *People v. Boyette* (2002) 29 Cal.4th 381, 458-459.) Appellant did not object or assert judicial misconduct in light of the court's exclusion of the testimony regarding Wal-Mart's loss prevention policies. In fact, he conceded that testimony regarding Wal-Mart's procedures did not help his case. Asserting such an objection would not have been futile. The court could have easily interjected an admonition to the jury that his rulings were not intended to and did not convey any opinion regarding the case - which is exactly the instruction he gave to the

7

jury at the conclusion of the case. Therefore, appellant has forfeited his claim of judicial misconduct on appeal.

Even if such a claim had been preserved, appellant's claim of judicial misconduct fails on the merits. A review of the entire record reveals that appellant was discourteous and defiant throughout his trial. Out of the presence of the jury, the judge admonished appellant that he would be held to the same standards as an attorney, that he could not yell out or interrupt, he could not argue with the court and he needed to comply with court rulings. Further, on a number of occasions, the trial judge intervened to assist appellant's presentation of his case. In more than one instance, the court restated appellant's question in an unobjectionable form or instructed him on how to refresh a witnesses' recollection. When the appellant struggled to impeach the witness with the surveillance video, the judge played the tape in its entirety three times for the jury, after which he allowed appellant to conduct additional cross-examination. In short, the record fails to support appellant's contention that the trial judge was disparaging or favorable toward the prosecution as to give such an impression to the jury.

4.      *The Court Properly Imposed High Term*

Appellant asserts that the court erred by using the same prior convictions supporting his conviction for felony theft as aggravating factors to impose the upper term for that offense. We disagree.

In this case, the trial court relied upon an undifferentiated restatement of appellant's long and extensive criminal history in deciding to impose the upper term. In so doing, the trial court necessarily included appellants' prior theft conviction and strike conviction used to elevate his petty theft to a felony and to double that term and add one year as a prison prior. Accepting appellant's contention that the use of these prior convictions to enhance his sentence as well as a factor in aggravation was erroneous, that error is harmless beyond a reasonable doubt. (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326-327.)

8

Appellant's criminal history was longer and more far-ranging than just his prior theft and strike convictions. Appellant suffered convictions dating back to 1996 and had been convicted on a number of different offenses that were not used to enhance his petty theft. Appellant was convicted of a drug-related felony in 2005, battery in 1995, 1996 and 2007 and contempt of court in 1992. Looking at the trial court's comments, it is plain that the court would have imposed the upper term even if the convictions available for its consideration were limited to these non-theft, non-strike convictions. Appellant's non-theft, non-strike convictions amply establish his recidivism. This single aggravating factor is sufficient to support imposition of the upper term. (See *People v. Cruz* (1995) 38 Cal.App.4th 427, 433.) As a result, any error would be harmless.

### *DISPOSITION*

The judgment and sentence are affirmed.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

JONES, J.[*]

WE CONCUR:

EDMON, P. J.                    ALDRICH, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.